IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| A.D. MALONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO.  2:14cv670-MHT |
| | ) | |
| DEPARTMENT OF THE AIR FORCE, | ) | |
| | ) | |
| Defendant. | ) | |

_____

| | | |
|---|---|---|
| A.D. MALONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO.  2:15cv699-MHT |
| | ) | |
| DEPARTMENT OF THE AIR FORCE, | ) | |
| and UNITED STATES AIR FORCE, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

On July 10, 2014, the pro se plaintiff, A.D. Malone, filed her complaint alleging that she was denied reasonable accommodations under the Americans with Disabilities Act ("ADA"), and she was subsequently terminated in violation of the ADA.  She named the Department of the Air Force as the sole defendant.  In her second complaint, filed on September 22, 2015, she named the Department of the Air Force and the United States Air Force as defendants and again challenged her termination.  Specifically, she alleged that her

employer "never provided reasonable accommodations and management discriminated against me in a manner that prevented me from getting work accomplished in a timely manner. Then they fired me, for poor performance." (Doc. # 1, Compl. at 2, ¶ 5, *Malone v. Dep't of Defense, et al.*, 2:15cv699-MHT-CSC). Because both lawsuits named her employer as a defendant and she complained about the same series of events, the court consolidated these two cases.

Malone seeks monetary damages, reinstatement, and injunctive and declaratory relief. The court has jurisdiction of these claims under 28 U.S.C. § 1331 pursuant to its federal question jurisdiction.

Now pending before the court is the defendants' motion for summary judgment (doc. # 66) filed on August 18, 2015.[1] On October 16, 2015, the plaintiff filed a response in opposition to the motion for summary judgment (doc. # 77). After careful review of the motion, the briefs filed in support of and in opposition to the motion, and the supporting and opposing evidentiary materials, the court concludes that the defendants' motion for summary judgment is due to be GRANTED, and this case is due to be DISMISSED with prejudice.

## II. THE SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to

---

[1] Also pending before the court is the plaintiff's motion to clarify (doc. # 80) filed on December 22, 2015. In light of the court's resolution of the defendants' motion for summary judgment, the plaintiff's motion to clarify will be denied as moot.

interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute][2] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation omitted); FED.R.CIV.P. 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine [dispute] as to any material fact and that the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof. *Id.* at 322-324.

Once the defendants meet their evidentiary burden and demonstrate the absence of a genuine dispute of material fact, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to her case

---

[2] Effective December 1, 2010, the language of Rule 56(a) was amended. The word "dispute" replaced the word "issue" to "better reflect[] the focus of a summary-judgment determination." FED.R.CIV.P. 56(a), Advisory Committee Notes, 2010 Amendments.

exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; FED.R.CIV.P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion.").  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in her favor.  *Greenberg*, 498 F.3d at 1263.

To survive the defendants' properly supported motion for summary judgment, the plaintiff is required to produce "sufficient [favorable] evidence" establishing a violation of her constitutional rights.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990) *quoting Anderson*, *supra*.  Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to her case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v.*

*Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co, Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary

judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, *see Hughes v. Rowe*, 449 U.S. 5 (1980), a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard v. Banks*, 548 U.S. 521, 529 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Moreover, the court does not have "license to serve as *de facto* counsel for a party . . . or to rewrite an otherwise deficient pleading in order to sustain a cause of action."  *GJR Inv., Inc. v. County of Escambia, Fl.*, 132 F.3d 1359, 1369 (11th Cir. 1998).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

## III.  FACTS[3]

The pertinent facts are undisputed.  A.D. Malone was employed as a Contract

---

[3] At this stage of the proceedings, this court takes the facts alleged by Malone as the non-movant as true and construes them in the light most favorable to her.  *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000) (citations omitted) ("In assessing whether there is any 'genuine issue' for trial, the court 'must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party" and 'resolve all reasonable doubts about the facts in favor of the nonmovant.").

However, the court accepts the defendants' factual assertions when they are based on undisputed evidence and have not been contradicted by the plaintiff. *See Singletary v. Vargas*, 804 F.3d 1174, 1176 n. 2 (11th Cir. 2015); *Scott v. Harris*, 550 U.S. 372, 379 (2007) ("[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." (quoting FED. R. CIV. P. 56(c))).

Specialist with the 42nd Contracting Squadron ("42nd CONS") at Maxwell Air Force Base in Montgomery, Alabama. She began her employment with the United States Army in 1984, and was assigned to the Department of the Air Force in 1994. On June 14, 2014, she was terminated from her position for "unacceptable" performance.

Malone's duties with the 42nd CONS were outlined in the Air Force Standard Core Personnel Document and included "[t]o perform preaward and postaward" contracting functions. (Doc. # 66-2, Ex. A at 2). Critical duties were defined as "[p]rocures and plans acquisitions for standard or specialized items, services, and/or construction contracts," "[d]evelops solicitations and evaluates responses," "[m]onitors contract performance and assists in contract terminations," and "[p]rovides advice and assistance to others relating to contracting work and prepares correspondence." (*Id*. at 2-3). Each duty required Malone to be responsive to customer needs, provide guidance to customers, and respond to inquiries and resolve problems in an accurate and timely manner. (*Id*.). The "[a]bility to plan, organize work, and meet deadlines" was listed as a requisite skill for the position. (*Id*. at 4).

During her employment, Malone was supervised by Sandra Turner. Turner became Malone's first level supervisor in March 2008. On September 8, 2008, Malone received a letter of counseling from Turner regarding her duty hours and workload. (Doc. # 66-5, Ex. D).[4] Of particular concern was Malone's late arrival at work.[5]

---

[4] In response to the defendants' motion for summary judgment, Malone provided many of the same documents in opposition to the motion. The court has thoroughly reviewed Malone's submissions but in an

Ms. Malone, you have established the duty hours of 0830 - 1730, which is in compliance with OI 36-2.[6]  However, I have observed under my supervision, that you are arriving to work almost daily 30 sometimes 45 minutes outside the Core Time of 0830.  I have spoken to you on several occasions to try and find out the source of your late arrival.  Your response has been medical.  I have afforded you several months to produce some type of medical letter (Non-Privacy Act Information) from your doctor to support the cause of your late arrivals.  To date, no letter has been produced.  I am concerned about the health of all of my employees, but without the appropriate medical support, I am unable to excuse this type of behavior.

(*Id.*)

Turner then set forth her expectations for Malone.

Late Arrival to Work.  Ms. Malone, first I would like to commend you for arriving at work at 0745 hours today, 8 Sep 08.  What a great way to start off of the week.  Let's continue down this path.  As of the date of this letter and in the future, I expect for you to arrive to work not later than 0830 hours and leave no earlier than [1730 hours] which are your scheduled duty hours.  I expect for you to contact the undersigned prior to your 0830 arrival time, if you find that you will be late or out sick for the day.  All annual or compensatory leave must be coordinated and approved in advance.  No annual or compensatory leave will be approved without advance coordination and approval.

(*Id.*)

On June 18, 2009, Turner completed Malone's Civilian Progress Review for the

---

effort to be concise and clear, the court cites only to the defendants' exhibits when the documents are the same.

[5]  Turner also expressed a concern about Malone's failure to work overtime one Saturday.  (Doc. # 66, Ex. D).

[6]  Operating Instruction 36-2 provides for flexible work schedules in the 42nd CON Squadron.  Employees may arrive between 0700 and 0830 and they may leave between 1600 and 1830 hours.  Employees may opt for a thirty (30) minute, forty-five (45) minute, one (1) hour lunch or one hour and thirty minute (1.30) lunch break but all employees must work an eight (8) hour work day unless leave is taken.  (Doc. # 66-5, Ex. D at 3).

period of April 1, 2009 to June 15, 2009. (Doc. # 66-6, Ex. H).  Turner noted problems with

Malone completing awards in a timely manner.

> Ms. Malone was responsible for 10 PRs during this period.  Two (2) were
> awarded late, based on squadron timeline for commodity buys (see Atch 1);
> three (3) are currently late, and two (2) are drastically behind schedule. . . .
> Ms. Malone has not meet (sic) any of her core duties, as she has made very
> little efforts to move her work.  In 2 months, Ms. Malone has made two
> awards.  One of the two late awards made (F2XHE19015A005) was elevated
> to ABW/CC.

(*Id.*)

In addition, Turner commented that Malone continued to "have problems with

arriving to work "on time," and she required "a lot of reminders/follow-up."  (*Id.*)

On July 15, 2009, Malone responded to the review.  (Doc. # 66-6, Ex. I).  For the

first time, Malone mentioned that she suffers from Adult Onset Attention Deficit Disorder.

(*Id.*).

> Ms. Malone was appraised in May and June of 2009 by Mrs. Sandra Turner.
> Ms. Malone advised Mrs. Turner that she is (sic) has been diagnosed with
> Adult Onset Attention Deficit Disorder (AOADD) for several years, and that
> Ms. Malone is currently being evaluated by a specialist who provides testing
> and documentation of the disorder.  Ms. Malone advised Mrs. Turner that the
> evaluation and summation should be available by the middle of July 2009.
>
> *       *       *
>
> Mrs. Turner advised Ms. Malone that she will not be allowed to work
> overtime or compensatory time because Ms. Malone is not producing enough
> during the regular eight hours.
>
> Ms. Malone is working her projects as steadily as she can.  Ms. Malone
> assists any team member who requests it whenever she can.

9

> Ms. Malone feels that once the situation is documented, and therapy can
> begin, her job performance shall improve.

(*Id.*)

Malone did not request any type of accommodation, and indicated that her job

performance would improve with therapy.

On July 23, 2009, Malone submitted to Turner a "Memorandum for Record" in which

she states that an attached letter and consultative note from Associated Psychologists

provided a diagnosis for her. (Doc. # 66-6, Ex. J). Malone also informed Turner that she

"now has to meet with her private medical doctor to find out his recommendation and/or

method of treatment." (*Id.*) The consultative note indicated that Malone was seen at

Associated Psychologists on June 24, 2009 for an intake assessment complaining of

"[i]nattentive symptoms." (Doc. # 77-10, Ex. 8).

> Patient presents with significant symptoms of inattentiveness and disturbance
> of concentration. Symptoms were not reportedly present in childhood or prior
> to current medical conditions and medications. However, symptoms
> reportedly interfere with current occupational performance. Patient was
> administered the Test of Variables of Attention and obtained a highly deviant
> score suggestive of an attentional problem. Please consider a medication for
> treatment of ADHD, keeping in mind her medical conditions.

(*Id.*)

Thereafter, Malone's primary care physician suggested "a change in Ms. Malone's

work hours as part of a method of therapy from the current 08:30 AM to 05:30 PM work

hours to 09:30 AM to 06:30 PM." (Doc.# 66-13, Ex. L). Turner informed Malone that the

letter for her doctor did not provide sufficient medical information for a decision about

accommodations to be made.  (Doc. # 66-14, Ex. M).  Malone's doctor provided additional information again suggesting a change in Malone's work hours but Turner informed Malone that she was "unable to temporarily change [her] reporting time. . . primarily because you do not have sufficient documentation."  (Doc. # 66-16, Ex. N and 66-17, Ex. P).

On January 21, 2010, Malone's primary care physician Dr. Martin Wybenga, wrote a letter to Turner indicating that Malone needed to alter her work hours because she "attends morning behavioral therapy sessions," and the therapy sessions were from 0800 to 0900 hours.  (Doc. # 66-30, Ex. CC).  According to her doctor, changing Malone's work hours would allow her to "attend behavioral therapy and still work an 8 hour day."  (*Id*.).  Dr. Wybenga stated that while Malone "would possibly" need additional time to complete tasks, she "should be able to work 40 hours per week with no adverse effect."  (*Id*.)

Malone filed an informal EEO complaint challenging her agency's failure to change her work hours which was ultimately resolved through mediation.[7]  To accommodate Malone's ADD, the 42nd CONS squadron agreed to provide weekly progress meetings to assist Malone with processing her work.  Malone agreed to withdraw her complaint, not pursue any other charges, and she agreed to "schedule and attend evening behavioral therapy sessions."  (Doc.# 66-19, Ex. R).

Although the weekly progress meetings were instituted, Malone's work performance did not improve, and on October 26, 2010, Turner placed her on a Performance

---

[7]  Unfortunately, the parties did not submit a copy of the plaintiff's informal EEO complaint.

Improvement Plan. *See* Doc. # 66-24, Ex. W.   In the performance plan, Turner acknowledged that Malone suffers from ADHD and noted that accommodations were currently in place.  (*Id*. at 7).  Turner advised Malone that she could request additional accommodations, but that she "must meet the same performance time standards that other contract specialists are required to meet."  (*Id*.).

On November 23, 2010, John Moody, a licensed counselor, submitted a letter suggesting additional accommodations for Malone, including "[r]eporting for work at 9:00 A.M. rather than 8:30 A.M.  This delay in her work start time could relieve unnecessary tension and stress normally associated with the "rush hour."  (Doc. # 66-28, Ex. AA). Moody also suggested allowing Malone extra time at the end of the day to complete her work and "reasonable time for rest" due to her responses to stress. (*Id*.).

Weekly progress meetings with Malone continued in accordance with the Performance Improvement Plan until Turner ended the plan on March 14, 2011. (Doc. # 66-29, Ex. BB).

On June 13, 2011, Malone was notified that she was being removed from her position for "unacceptable performance" effective June 14, 2011.  (Doc.# 66-31, Ex. DD).  After she was terminated, she pursued an EEO complaint against her agency.

She filed this lawsuit on July 10, 2014.  *See Malone v. Department of the Air Force*, 2:14cv670-MHT-CSC (M.D. Ala.).

On September 22, 2015, after receiving an adverse decision from the EEOC Office

of Federal Operations,[8] Malone filed her second lawsuit. *See Malone v. Department of Defense*, 2:15cv699-MHT-CSC (M.D. Ala.).

## IV. DISCUSSION

Malone alleges that the defendants discriminated against her in violation of the Americans with Disabilities Act ("ADA") when they failed to accommodate her disability, Attention Deficit Disorder ("ADD"). She further asserts that the defendants then terminated her in violation of the ADA. Although the pro se plaintiff alleges disability discrimination under the ADA, the law is clear that because Malone worked for the Department of the Air Force, her claims properly fall under the Rehabilitation Act, 29 U.S.C. §794(a).[9] "The Act prohibits federal agencies from discriminating in employment against otherwise qualified individuals with a disability.'" *See Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005); *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Dickerson v. Sec'y, Dep't of Veterans Affairs Agency*, 489 F. App'x 358, 359-60 (11th Cir. 2012) (quoting *Sutton v. Lader*, 185 F.3d 1203, 1207 (11th Cir. 1999)).

The elements of a claim under § 501 of the Act are (1) an individual has a disability; (2) the individual is otherwise qualified for the position; and (3) the

---

[8] On October 22, 2012, Malone appealed the denial of her EEOC charge. On June 24, 2015, the Commission affirmed the Agency's final order finding that the Agency "did not discriminate against [Malone] on the bases of disability or reprisal for prior protected activity when it gave her an overall performance rating of "unacceptable" and did not allow her to stay past her end of duty day to finish work." (Doc. # 1-1, *Malone v. Dep't of Defense*, 2:15cv699-MHT-CSC (M.D. Ala.)).

[9] 29 U.S.C. § 794(a) provides in pertinent part that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."

individual was subjected to unlawful discrimination as the result of his disability. *See id.* The Act defines "individual with a disability" as any person who: "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." 29 U.S.C. § 705(20)(B). In turn, "major life activities" are "functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1614.203(a)(3).

*Mullins,* 228 F.3d at 1313.

The defendants assert that they are entitled to summary judgment because Malone cannot establish a *prima facie* case of disability discrimination. "'To establish a *prima facie* case of discrimination under the [Rehabilitation] Act, an individual must show that (1) [s]he has a disability; (2) [s]he is otherwise qualified for the position; and (3) [s]he was subjected to unlawful discrimination as the result of h[er] disability.'" *Ellis*, 432 F.3d at 1326 (quoting *Sutton*, 185 F.3d at 1207-08).

Under the Rehabilitation Act, a plaintiff can prove disability discrimination through either direct evidence of discrimination, or through circumstantial evidence. If the plaintiff relies on circumstantial evidence, the *McDonnell Douglas* burden-shifting framework applies. Accordingly, the plaintiff must establish a *prima facie* case for discrimination, the defendant must offer a legitimate, non-discriminatory justification for the employment decision, and the plaintiff must ultimately prove that the defendant's justification is a pretext for discrimination.

*Curry v. Sec'y, Dep't. of Veterans Affairs*, 518 F. App'x 957, 963-64 (11th Cir. 2013).

The Rehabilitation Act defines disability as "a physical or mental impairment that substantially limits one or more major life activities." 29 U.S.C. § 705(9)(B). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks,

seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."   42 U.S.C. § 12102(2)(A).

> The term "substantially limits" means "[u]nable to perform a major life activity that the average person in the general population can perform"or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity."   29 C.F.R.§ 1630.2(i)(1)(i), (ii).

*Simpson v. Ala. Dep't of Human Res.*, 311 F. App'x 264, 267 (11th Cir. 2009)

Malone contends that she suffers are Attention Deficit Disorder ("ADD") which substantially limits major life activities of sleeping and working.   (Doc. # 77 at 3). According to Malone, her ADD "hinders her ability to think in an organized manner, to perform tasks given short time constraints, to sleep and to work."   (*Id*.).   Beyond her conclusory statement that her ADD affects her ability to sleep, Malone points to no evidence that her ADD has any effect whatsoever on her ability to sleep.   There is no reference in any of her medical records that she has difficulty sleeping. There is absolutely no evidence before the court from which a reasonable jury could conclude that Malone is substantially limited in the major life activity of sleeping.

The court next turns to Malone's assertion that her ADD substantially limits the major life activity of working.   The mere fact that Malone may have been diagnosed with

ADD[10] is insufficient under the Act to establish that her impairment rises to the level of a disability.

> It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires [that claimants offer] evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial.

*Calef v. Gillette Co.*, 322 F.3d 75, 83 (1st Cir. 2003) *quoting Toyota Motor Mfg., Inc. v. Williams*, 534 U.S. 184, 198 (2002) *overturned due to legislative action* U.S. Pub.L. 110-325 Jan. 1, 2009 (internal quotations and citations omitted). *See also Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1132 n. 3 ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." *quoting* 29 C.F.R. § 1630.2(j) (App.)).

On June 24, 2009, Malone presented to Associated Psychologists for an intake evaluation. She reported being easily distracted and feeling overwhelmed. (Doc. #66-34, Def's Ex. 1 at1). On July 7, 2009, Malone was administered the TOVA test.[11]  (*Id.*) Her scores were "suggestive of an attentional problem." (*Id.* at 2). On July 21, 2009, Malone participated in individual therapy and reported stressors at work. She received a consult

---

[10]  The defendants dispute whether Malone has even demonstrated that she has been diagnosed with ADD.

[11]  The TOVA test stands for "Test of Variables of Attention," and is designed to measure attention and impulsivity to diagnose attention disorders. Lawrence M. Greenberg, M.D., *Attention Deficit Disorders and the Test of Variables of Attention (T.O.V.A.®)* (Feb. 10, 2016, 1:08 PM), http://www.tovatest.com/adhd/

note to assist her in receiving accommodations.  (*Id.*)  She did not want to continue treatment and did not schedule any additional appointments.  (*Id.*)

"When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires . . . that plaintiff[] allege [she is]  unable to work in a broad class of jobs."  *Toyota Motor Mfg., Inc*, 534 U.S. at 200 *quoting Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999)  *overturned due to legislative action* U.S. Pub.L. 110-325 Jan. 1, 2009.  *See also Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997).  Malone has offered no evidence that she was precluded from any other job; she merely asserts that she could not do her contracting job without accommodation.

Finally, "[a] person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently "substantially limits" a major life activity. To be sure, a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not "substantially limi[t]" a major life activity."  *Sutton*, 527 U.S. at 482-83.  The medical evidence suggests that Malone's condition is treatable with behavioral therapy. (Doc. # 77-10, Ex. 8).  As a result of informal mediation, Malone agreed to participate in evening therapy sessions.  Beyond this, she has failed to establish that her ADD substantially limited the major life activity of working, and thus, she has failed to demonstrate that her ADD is a "disability."  The court concludes that Malone has failed to demonstrate that her

individualized condition of ADD substantially limits the major life activity of working, and thus, she cannot demonstrate that she suffers from a disability within the meaning of the Act.

Furthermore, the second element of a Rehabilitation Act claim "requires a court to consider whether a plaintiff is a 'qualified individual,' meaning that she, with or without any reasonable accommodation, can perform the essential functions of the job." *Id*. (citing 42 U.S.C. § 12111(8)). The court is to "conduct a two-step inquiry" asking "whether a plaintiff can perform the essential functions of the job," and, if she cannot, "whether any reasonable accommodation would allow her to do so." *Id*. at *4.

The duty hours at the squadron were generally 0730 hours to 1630 hours. Malone's duty hours were previously adjusted so that she worked from 0830 to 1730 hours. The only accommodations requested by Malone were that her work hours be changed to 0930 to 1830, and that she be given an additional thirty (30) minutes for lunch extending her lunch break from thirty (30) minutes to one (1) hour. Malone has failed to demonstrate how her request was related to her disability. She has made no showing that her disability required an accommodation that enabled her to arrive at work at a later scheduled time, particularly in light of the agreement that Malone would attend scheduled therapy in the evenings instead of the mornings. In this circuit, a request for accommodation must be direct, specific, and must also identify how the accommodation is linked to her disability. *See United States v. Hialeah Housing Authority,* 418 F. App'x 872, 876 (11th Cir. 2011) ("the duty to provide a reasonable accommodation is not triggered unless a specific demand for an

18

accommodation has been made").  While Malone argues that her request for later duty hours was related to her alleged disability, she failed to demonstrate how the later duty hours would constitute a reasonable accommodation.  In Malone's last request for an later arrival date, her counselor, John Moody, suggested that Malone's hours be changed because the later start "could relieve unnecessary tension and stress normally associated with the 'rush hour.'"  (Doc. # 77-10, Ex. 8).  This is simply insufficient to meet her burden."The burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable." *Stewart*, 117 F.3d at 1286 (11th Cir. 1998).  *See also Dickerson*, 489 F. App'x at 360 ("The plaintiff has the burden to identify an accommodation and establish that the accommodation is reasonable.").  The Rehabilitation Act does not require an employer 'to accommodate an employee in any manner in which that employee desires.'"  *Id*., at 1285 (quoting *Terrell v. USAir,* 132 F.3d 621, 626 (11th Cir.1998)).  An employee is "not entitled to the accommodation of her choice, but only to a reasonable accommodation." *Id.*  "The employee "does not satisfy her initial burden by simply naming a preferred accommodation" because she must show that the accommodation is 'reasonable' given her situation."  *Dickerson*, 489 F. App'x at 360.  This Malone has failed to do because she has not shown that relief from <u>normal</u> stress of the morning commute is necessary to alleviate the difficulties[12] she had doing her job during

---

[12]  In June 2008, Malone described those difficulties as "focusing, getting her work done, and . . . [being] overwhelmed . . . [and] often easily distracted."  (Doc. # 66-34, Ex. 3, Att. 3-A at 2).

the work day.  Thus, the court concludes that no reasonable jury could conclude that the accommodations requested by Malone were reasonable accommodations for her alleged disability of ADD.

Even if the court were to conclude that Malone could establish that she suffers a disability within the meaning of the Act, her claim still fails because Malone cannot demonstrate that she was subjected to discrimination *solely because of* her alleged disability as required by the Rehabilitation Act.

> It is not enough for a plaintiff to demonstrate that an adverse employment action was based partly on [her] disability. *See McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1074 (11th Cir. 1996).  Rather, under the Rehabilitation Act, a plaintiff must prove that [s]he suffered an adverse employment action "solely by reason of" [her] handicap.

*Ellis*, 432 F.3d at 1326.

Malone contends that the defendants discriminated against her solely on the basis of her ADD  by failing to provide her with her requested reasonable accommodations as required by the Rehabilitation Act.  The defendants argue that Malone cannot demonstrate that the denial of her accommodation of a change in her duty hours was an act of discrimination because she cannot demonstrate that the accommodation was denied *solely* on the basis of her ADD as the Rehabilitation Act requires.  The defendants provided several non-discriminatory reasons for denying a change in Malone's duty hours. First, her hours were already an hour later than the work hours of most of her customers. Second, Malone's reason for needing later hours to participate in therapy were mitigated when she

agreed in mediation to participate in evening behavioral therapy.  The court concludes that Malone has failed to demonstrate that she was subjected to discrimination *solely on the basis* of her alleged disability.

Moreover, to the extent that Malone contends she was terminated *solely because* of her ADD, it is undisputed that Malone had difficulty completing her work in a timely fashion long before she was diagnosed with ADD, and that there had been issues with her work performance long before she requested accommodations.  Consequently, the court concludes that no reasonable jury could conclude that Malone was discriminated against *solely on the basis* of her ADD, and thus, the defendants' motion for summary judgment is due to be granted as to Malone's Rehabilitation Act claims.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the defendants' motion for summary judgment be GRANTED and this case be DISMISSED with prejudice. It is further

ORDERED that the plaintiff's motion to clarify (doc. # 80) be and is hereby DENIED as moot.  Finally, it is

ORDERED that the parties shall file any objections to this Recommendation on or before **March 9, 2016**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the

Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 24th day of February, 2016.

_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE